**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Matthew Shaffer, | ) | No. 03-CV-2344-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| State of Arizona Citizens Clean Election Commission, et al., | ) | |
| Defendants. | ) | |

**I.**

Following the jury trial, judgment was entered for plaintiff on his defamation claim and his Fourteenth Amendment liberty interest claim, and for defendants on plaintiff's First Amendment claim, intentional interference with contractual relations claim, and wrongful termination claim (doc. 137). The court has before it defendants' Motion to Alter or Amend the Judgment (doc. 143), plaintiff's Response (doc. 150), and defendants' Reply (doc. 151); and defendants' Motion for Entry of Judgment as a Matter of Law on the Defamation Claim and Motion for Remittitur, or Alternatively for a New Trial on Damages (doc. 145), plaintiff's Response (doc. 149), and defendants' Reply (doc. 152). Pursuant to our Order dated November 10, 2005 (doc. 153), we do not now consider plaintiff's Motion for Award of Attorneys' Fees and Expenses (doc. 142).

**II.**

Defendants move for judgment as a matter of law on the defamation claim arguing that plaintiff failed to prove that defendants acted with actual malice.  A party may move for judgment as a matter of law "at any time before submission of the case to the jury," but to preserve the right to renew the motion after the return of the verdict, the party must move "at the close of all the evidence."  Fed. R. Civ. P. 50.  Therefore, a motion for judgment as a matter of law at the close of the plaintiff's case, but not at the close of all evidence, is insufficient to preserve the right to later renew the motion.  Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1345-46 (9th Cir. 1985); Patel v. Penman, 103 F.3d 868, 878 (9th Cir. 1996).  This "serves the important purpose of alerting the opposing party to the alleged insufficiency of the evidence at a point in the trial where that party may still cure the defect by presenting further evidence."  Farley Transp. Co., Inc., 103 F.3d at 1346.  This rule is strictly applied, thereby avoiding the need to engage in the difficult and subjective determination of whether the failure to timely raise the motion prejudiced the opposing party.  Id.  Here, defendants moved for judgment as a matter of law at the close of the plaintiff's case, but failed to move again at the close of all the evidence.  Accordingly, defendants are barred from renewing their motion for judgment as a matter of law.

Defendants argue, based on Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 104 S. Ct. 1949 (1984), that regardless of their failure to timely move, we have an independent constitutional obligation to consider whether plaintiff proved that defendants acted with actual malice.  Reply at 2.  In Bose Corp., the Supreme Court concluded that in order to ensure that a defamation defendant's First Amendment rights are protected, an appellate court is not bound by the trier of facts' finding of actual malice, and must review the record to determine whether that finding is supported by clear and convincing evidence.  Bose Corp., 466 U.S. at 509-11, 104 S. Ct. at 1964-65.  Bose Corp. does not, however, require a court to disregard federal procedural rules to consider the

1   actual malice issue.  Defendants' motion for judgment as a matter of law is untimely

2   raised, and accordingly, is denied (doc. 145).

3                                                          **III.**

4           Defendants move for a new trial on the defamation claim damages, or remittitur of

5   the damages,[1] arguing that the award was excessive because most if not all of the

6   damages awarded are attributable to Shaffer's lawful termination, not to defendant

7   Colleen Connor's defamatory statement.[2]  <u>Motion for Remittitur or Alternatively for a</u>

8   <u>New Trial</u> at 10-12.  Defendants also argue that regardless of the causation, the damage

9   award of $1.1 million is excessive.  <u>Id.</u> at 8-10.

10          The federal rule for determining excessiveness is furnished by state law because

11  defamation is a state law claim.  <u>Gasperini v. Center for Humanities, Inc.,</u> 518 U.S. 415,

12  426-39, 116 S. Ct. 2211, 2219-25 (1996); 12 James Wm. Moore et al., <u>Moore's Federal</u>

13  <u>Practice</u> § 59.13[2][g][iii][C].  Pursuant to Arizona law, a court may order a new trial

14  conditioned on the prevailing party's refusal to accept a remittitur if the verdict was "the

15

16          [1] Plaintiff argues that defendants are barred from raising this claim because they failed
17  to move for judgment as a matter of law at the close of all the evidence.  <u>Response to Motion</u>
    <u>for New Trial</u> at 5.  Defendants have, however, moved for a new trial, or in the alternative
18  for remittitur of damages, not for judgment as a matter of law, and therefore need not comply
    with the requirements of Rule 50, Fed. R. Civ. P.  <u>Freund v. Nycomed Amersham</u>, 347 F.3d
19  752, 765 (9th Cir. 2003); Fed. R. Civ. P. 59(b).

20          [2] Plaintiff argues that the defendants' failure to object at trial to the verdict forms
21  precludes them from arguing that the various claims can remedy different harms.  <u>Response</u>
    <u>to Motion for New Trial</u> at 2 n.1.  The jury was instructed to enter the damage award for each
22  claim on its respective verdict form, and then, to avoid duplicative damage awards, plaintiff
    would be awarded the highest damage award.  Plaintiff, however, argued that two claims may
23  relate to different harms and therefore simply picking the highest award may not fully
24  compensate the plaintiff.  That is, there may be X reputation harm from the wrongful
    termination and Y reputation harm from the defamation, which are not duplicative and should
25  be totaled.  <u>Trial Transcript</u> at 1120:17-1124:24.  In contrast, defendants argue here that the
26  wrongful termination may have caused plaintiff harms A and B, but the defamation only
    caused plaintiff harm B.  This argument is not inconsistent with the verdict forms because
27  we contemplated that the jury may award different damages for different claims.
28  Accordingly, defendants are not barred from raising their argument.

1   result of passion or prejudice." Starkins v. Bateman, 150 Ariz. 537, 548, 724 P.2d 1206,

2   1217 (1986).  A verdict is the result of passion or prejudice if the "damages awarded [are]

3   so unreasonable and outrageous as to shock the conscience of the court." Id. at 549, 724

4   P.2d at 1218.  However, given the First Amendment considerations in a defamation case,

5   we must also vigilantly guard against excessive and impermissibly punitive jury verdicts.

6   See Gertz v. Robert Welch, Inc., 418 U.S. 323, 349-50, 94 S. Ct. 2997, 3011-12 (1974);

7   Curtis Pub. Co. v. Butts, 388 U.S. 130, 160, 87 S. Ct. 1975, 1994 (1967).

8         Shaffer produced the following evidence with regard to his damages and their

9   cause:  Shaffer worked in the public service where reputation is important, Trial

10   Transcript at 419:17-19, 545:16-546:1; he had a good reputation prior to the incidents

11   underlying this litigation, Trial Transcript at 756:7-18; the defamatory statement that

12   Shaffer violated A.R.S. § 13-2311, a felony fraud provision, was available to all

13   prospective employers, Trial Transcript at 317:14-18; the defamatory statement was

14   released to the media following a public information request and was included in a

15   newspaper article, Trial Transcript at 302:25-303:18; Shaffer's post-dismissal job search

16   took approximately one year whereas previous job searches have taken him no more than

17   two months, Trial Transcript at 322:3-7; Shaffer actively searched for a job by making

18   contacts in the state employee community, posting his resume on numerous electronic

19   databases, and sending out three to five applications a week, and regardless, Shaffer was

20   still unable to find a government position, Trial Transcript at 319:17-321:22; the

21   economic harm from taking a lower-paying job was $441,646, and could be substantially

22   higher, Trial Transcript at 316:8-317:2; Shaffer suffered significant emotional distress,

23   Trial Transcript at 303:25-304:3, 322:8-323:8, 418:1-19; and Shaffer first heard of the

24   defamatory statement through a newspaper article, which caused him emotional distress,

25   Trial Transcript at 299:11-304:3.  Moreover, the jury was instructed that upon a finding of

26   defamation, damages to plaintiff's professional reputation may be presumed, Jury

27   Instruction No. 14 (doc. 121), an issued not raised by defendants in these briefings.

28

1  Shaffer, however, failed to produce any evidence that prospective employers

2  considered the defamatory statement in rejecting Shaffer's employment applications.

3  Moreover, it is equally plausible that Shaffer's difficulty in finding employment following

4  his termination arose substantially from the fact that he was dismissed from his prior

5  position.  Similarly, his emotional and reputation difficulties logically arose in part from

6  his termination.  Regardless, Shaffer produced substantial evidence from which a jury

7  could conclude, without mere speculation, that the defamatory statement alone caused

8  Shaffer substantial economic, reputation, and emotional harm.

9  We believe, however, that the award of $1.1 million on the defamation action is

10  manifestly unreasonable and therefore shocks the judicial conscience.  Shaffer requested

11  damages "easily exceed[ing] $1 million," which included damages for Shaffer's wrongful

12  termination.  Trial Transcript at 1273:23-24.  Shaffer's termination caused him substantial

13  economic, reputation, and emotional damages, all of which are unavailable since Shaffer

14  failed to succeed on his wrongful termination claim.  We believe that although the jury

15  found against Shaffer on the wrongful termination claim, they nonetheless compensated

16  him for damages arising out of his termination.  We therefore reduce the damage award

17  by 40%, to $660,000, a reasonable measure of the damages that arose only from the

18  defamation.  Accordingly, we grant defendants' motion for a new trial on defamation

19  damages, conditioned on Shaffer's refusal to accept a remittitur to $660,000 (doc. 145).

20  **IV.**

21  Defendants also move for a new trial on the Fourteenth Amendment liberty interest

22  damages, or remittitur of the damages, arguing that the damages awarded were not caused

23  by defendants' failure to comply with the Fourteenth Amendment, and even if they were,

24  they are excessive.  Motion for Remittitur or Alternatively for a New Trial at 13-16.  The

25  federal rule for determining excessiveness is furnished by the federal "shocks the judicial

26  conscience" test because this is a federal claim.  See Gasperini v. Center for Humanities,

27  Inc., 518 U.S. 415, 426-39, 116 S. Ct. 2211, 2219-25 (1996); 12 James Wm. Moore et al.,

28  Moore's Federal Practice § 59.13[2][g][iii][B].

1    Defendants confuse the Fourteenth Amendment protection from a state's

2    deprivation of a person's property without due process, with the Fourteenth Amendment

3    protection from a state's deprivation of a person's liberty without due process.  In a

4    property interest claim in the government employment context, an employee that is

5    entitled to his government employment–his property interest–cannot be dismissed from

6    that employment without proper procedure.  Board of Regents v. Roth, 408 U.S. 564,

7    577, 92 S. Ct. 2701, 2709 (1972).  A court may award damages "which directly resulted

8    from the failure to give the proper procedure."  Brady v. Gebbie, 859 F.2d 1543, 1551

9    (9th Cir. 1988).  However, where a plaintiff is denied the proper procedure, but his

10   dismissal is ultimately found to be justified, he is only entitled to nominal damages for the

11   denial of procedure, and emotional damages caused by the denial of the procedure, but is

12   not entitled to any compensatory damages arising out of the termination of employment.

13   Carey v. Piphus, 435 U.S. 247, 263-67, 98 S. Ct. 1042, 1052-54 (1978).  Defendants

14   mistakenly apply the Carey rule to the liberty interest context.  See Motion for Remittitur

15   or Alternatively for a New Trial at 13-16.

16   If dismissing a government employee will foreclose the possibility of subsequent

17   employment, such as if the government's accusations against the employee impair the

18   employee's reputation for honesty or morality, the dismissal will constitute a deprivation

19   of liberty and require a fair hearing.  See Codd v. Velger, 429 U.S. 624, 626-27, 97 S. Ct.

20   882, 883-84 (1977); Brady, 859 F.2d at 1552.  Here, the jury found that Colleen Connor's

21   statement that accused Shaffer of felonious fraud, which was made in the course of

22   terminating Shaffer, undermined Shaffer's opportunity to obtain future employment and

23   was therefore a deprivation of his liberty and required a notice and a meaningful name

24   clearing hearing.  Jury Instruction No. 20 (doc. 121).  The jury also found that Shaffer

25   never received those required procedures.  Id.

26   As with a property interest claim, a court may award damages "which directly

27   resulted from the failure to give the proper procedure."  Brady, 859 F.2d at 1551.

28   However, unlike with a property interest claim, the issue of concern in a liberty interest

claim is whether the statements made will foreclose the former employee's ability to garner future employment, not whether the employee was properly dismissed. Therefore, the fact that the jury found that Shaffer was justifiably dismissed is irrelevant to the damages analysis under the liberty interest claim. The defendants are liable for all damages that flow from the deprivation of liberty without due process—which includes all the damages caused by the defamation because the purpose of the name clearing hearing is to rectify any untruth—and any emotional harm Shaffer suffered for being denied the due process. The defamation award and the liberty interest award are identical, which merely shows that Shaffer did not prove any additional emotional harm arising strictly from his denial of procedural due process.

As with the defamation award and for the same reasons, we believe that the liberty interest award of $1.1 million is manifestly unreasonable and therefore shocks the judicial conscience. Accordingly, we grant defendants' motion for a new trial on the liberty interest damages, conditioned on Shaffer's refusal to accept a remittitur to $660,000 (doc. 145). As the defamation award and the liberty interest award represent the same damages, the remittitur would reduce the total damage award to $660,000.

**V.**

Accordingly, **IT IS ORDERED** denying as moot defendants' Motion to Alter or Amend the Judgment (doc. 143).

**IT IS FURTHER ORDERED** denying defendants' Motion for Entry of Judgment as a Matter of Law on the Defamation Claim (doc. 145).

**IT IS FURTHER ORDERED** granting defendants' Motion for Remittitur, or Alternatively for a New Trial on Damages (doc. 145).

Plaintiff shall inform the court of his decision with regard to the remittitur within 15 days of the docketing of this order.

If plaintiff accepts the remittitur, the briefing schedule for the Motion for Attorneys' Fees identified in our Order dated November 10, 2005 shall proceed on the

acceptance date (doc. 153).  If plaintiff rejects the remittitur, we will set a scheduling hearing to schedule a trial on damages.

DATED this 19th day of January, 2006.


*Frederick J. Martone*

Frederick J. Martone
United States District Judge